UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Quatros Deshanno Carruth,                                Civ. No. 08-943 (DWF/JJK)

        Petitioner,
v.                                                                              **REPORT AND
                                                                                    RECOMMENDATION**
Warden Dwight Fondren, Federal
Correctional Institution Sandstone,
Minnesota; Federal Bureau of Prisons,

        Respondent.

---

Quatros Deshanno Carruth, 30888-044, Federal Correctional Institution, P.O. Box 1000, Sandstone, MN 55072, *pro se*.

Leshia M. Lee-Dixon, Assistant United States Attorney, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

    This matter is before the undersigned United States Magistrate Judge on the Petition of Quatros Deshanno Carruth for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1).  The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court recommends that Petitioner's Petition for Habeas Corpus relief be denied.

## I. INTRODUCTION

    Petitioner is a federal inmate incarcerated at FCI Sandstone.  He is serving a 120-month aggregate sentence, followed by four years of supervised release, imposed by the United States District Court for the Eastern District of Missouri for

conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, carrying a firearm during and in relation to a drug trafficking crime, and conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 846, and in violation of 18 U.S.C. § 924(c).  Petitioner has a projected release date of December 25, 2012, pursuant to Good Conduct Time release.  (Doc. No. 9, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)

This matter arises out of a disciplinary sanction imposed by the prison as a result of an incident that took place on March 6, 2007, at FCI Texarkana when Petitioner failed to provide a urine sample that had been ordered by the prison authorities as part of its drug testing program.  Petitioner claims that his constitutional rights were violated and seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 with an order that the Bureau of Prisons be required to reverse and expunge the disciplinary action or, in the alternative, an order directing the Respondent to conduct a new disciplinary hearing in this matter.

## II.    FACTUAL BACKGROUND

The Bureau of Prisons has a procedure in place to determine whether prisoners are using illegal drugs and this includes taking urine samples.  (*See* Buege Decl. ¶ 16 (citing Bureau of Prisons Program Statement 6060.08, *Urine Surveillance and Narcotic Identification*).)  If an inmate is unwilling to provide a urine sample within two hours of a request for it, the prison staff must file an incident report; an inmate is presumed unwilling to provide a sample if he fails to

2

provide it within the two-hour allotted time period. (*Id.*)  A prison official may, in his or her discretion, extend the time for the inmate to provide the sample if this is warranted by the specific situation, for example, if the inmate has a documented medical or psychological problem about urination or is dehydrated.  Bureau of Prisons Program Statement 6060.08, *Urine Surveillance and Narcotic Identification*.

On the morning of March 6, 2007, the staff at the FCI Texarkana informed Petitioner that he would have to provide a urine sample.  The staff officer in charge of collecting inmate urine samples testified that Petitioner came to the room where the urine samples were being collected at 8:15 a.m. and was told that he would have at least two hours to provide a sample.  Petitioner was given an eight ounce glass of water to drink when he arrived at the room, and he drank several additional glasses of water during the next two hours.  The staff officer stated that Petitioner was afforded several opportunities during the two-hour time frame to provide a urine sample, was escorted each time to a toilet, but on each occasion Petitioner failed to provide a sample.  According to the staff officer, at 10:00 a.m. and then again at 10:15 a.m., the Petitioner stated that he could not provide a sample because of his inability to urinate.  At 10:15 a.m., because Petitioner refused to provide a urine sample, he was removed from the room where the samples were being taken and escorted to the segregation unit.

Petitioner admits that he did not provide a urine sample, but contends that this resulted from his suffering from "shy bladder syndrome," not from a refusal to

provide a sample.  In fact, he contends that he drank several glasses of water and tried very hard to urinate, but was simply unable to do so.  Moreover, he contends that he was not given a full two hours to provide the sample.  He says that he arrived at the room at approximately 8:25 a.m., not 8:15 a.m. as claimed by the staff supervisor, and was removed and sent to segregation at 10:15 a.m., thus losing an additional 10 minutes to provide a sample.

An incident report was written up on March 6, 2007, at 10:15 a.m., charging Petitioner with Refusing to Provide a Urine Sample, a Code 110 violation of BOP Policy.  (*See* Buege Decl. ¶ 6, Attach. C.)  This incident report was delivered to Petitioner at 7:30 p.m. that same day.  (*Id.* ¶ 7.)  A staff member both read the incident report to Petitioner and provided him with a copy.  (*Id.*)  The incident report investigating officer found sufficient evidence and information to support the charge in the incident report, and the matter was referred to a Unit Discipline Committee ("UDC") that consisted of one or more institutional staff members delegated by the Warden with the authority and duty to hold an initial hearing upon completion of the investigation.  *See* 28 C.F.R. § 541.15.  A UDC can expunge a minor, non-repetitive incident report, determine the inmate committed the prohibited act and impose minor sanctions, or refer the matter to a Disciplinary Hearing Officer ("DHO") for further review and action.  (*Id.*)  Petitioner appeared before the UDC on March 9, 2007, at which time he stated that on March 6, 2007, he had been advised at 8:20 a.m. that he had until 10:30 a.m. to provide a urine sample, and that he drank 20-25 cups of water but

4

was unable to urinate by 10:15 a.m., which was when he was taken to segregation. Based on the level of the sanction to be imposed in this case, which included the loss of Good Time Credit, the UDC referred the matter to the DHO, who is an independent discipline hearing officer responsible for conducting institutional discipline hearings and imposing appropriate sanctions for incidents of inmate misconduct. *See* 28 C.F.R. § 541.16.

Before holding a hearing, the DHO reviewed the initial incident report and found it lacking in detail and returned the incident report to the reporting officer for a rewrite. The DHO said that "[t]he rewrite was requested in the interest of fairness, to provide inmate Carruth as well as the DHO with the facts/available information concerning the charges." (Buege Decl. ¶ 11, Attach. F.)

The incident report was rewritten on April 17, 2007. The new incident report, which contained greater detail, was then delivered to Petitioner at 12:29 p.m. on April 18, 2007. (Buege Decl. ¶ 12.) Again, a staff member read the incident report to Petitioner and provided him with a copy of it. As before, the incident report was forwarded to the UDC for further processing and referred on to the DHO for hearing.

On April 23, 2007, Petitioner was provided with the Statement of Inmate Rights at Discipline Hearing, which set forth various due process rights that an inmate at a hearing before the DHO has, including, for example, the right to call witnesses, to present evidence, and to have a fulltime member of the prison staff represent the inmate before the DHO. (Buege Decl. ¶ 14, Attach. E.) On

5

April 26, 2007, the DHO conducted a hearing.  Petitioner chose not to have a staff member represent him at the hearing and to not call any witnesses to testify.  According to the DHO's report of the hearing, Petitioner made the following statement at the hearing:

> I was told that we had to do the UA.  I went to the Post Office.  When I got back, Ms. Hernandez said I had to do a UA and I had to at 10:30 a.m.  I kept drinking water.  I couldn't use it.  Every time I tried to give one, it takes me a while.  I am the Camp Driver.  I knew what came with the job.

(Buege Decl. ¶ 15, Attach. F.)  The DHO also considered the written statement of the reporting officer and a written statement dated April 23, 2007, from EMT Gary Jenkins who stated that he checked Petitioner's medical record and found no active medications nor any report of Petitioner complaining about a problem with his kidneys.  In addition, the DHO considered evidence that Petitioner had successfully provided urine samples in compliance with the BOP drug testing program in the past on three separate occasions.

The DHO determined that Petitioner committed the prohibited act of Refusing to Provide a Urine Sample or to Take Part in Other Drug-Abuse Testing, a Code 110 Violation of BOP Policy.  The DHO sanctioned Petitioner to the disallowance of 75% of Good Conduct Time, disciplinary segregation of 60 days, loss of visiting privileges for one year, and a recommendation that Petitioner receive a disciplinary transfer.  The DHO advised Petitioner of his appeal rights through the Administrative Remedy Procedure.  The DHO signed the report on May 7, 2007, and the report was delivered to Petitioner on May 15,

2007.  Petitioner appealed to the regional and central offices.  At each level, his administrative remedy was denied.

### III.   STANDARD OF REVIEW

In order for relief to be granted under 28 U.S.C. § 2241, Petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  It is well-settled that "[a] necessary predicate for the granting of federal habeas relief [to a Petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States."  *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).  Petitioner's constitutional claim is that he was not afforded due process as required by the Fifth Amendment.

Depriving Petitioner of good conduct time credits as a discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause of the Fifth Amendment.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  In reviewing due process in this context, it is important to keep in mind that internal prison disciplinary proceedings do not function in the same manner as criminal prosecutions and inmates are not afforded the full "panoply" of rights as criminal defendants.  *See Ponte v. Real*, 471 U.S. 491, 495 (1985).  In *Wolff*, the Supreme Court held that where certain basic procedural elements of the discipline process exist, the Constitution's guarantee of procedural due process would be satisfied.  The five elements required for procedural due process with regard to a prison disciplinary hearing are:  (1) written notice of the

7

charged misconduct at least 24 hours before the hearing; (2) an impartial hearing body; (3) an opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence relied upon and reasons for the sanction.  418 U.S. at 564-70.

Even if procedural due process requirements are satisfied, we still must determine whether there was sufficient evidence to support the decision to discipline Petitioner.  In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), the Supreme Court provided guidance regarding the appropriate standard of review to apply in our assessment of prison disciplinary decisions involving the loss of good conduct time credits.  The requirements of due process are met, and the decision of the prison discipline officer must be upheld, if there is "*some evidence*" to support the decision.  *Hill*, 472 U.S. at 455, 457 (emphasis added).  In *Hill*, the court described the process to be used by the reviewing court as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witness, or weighing of the evidence.  Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis added).  Once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO.  *See*

8

*id.* at 457.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  *Id.* at 456.

## IV.  DISCUSSION

### A.    Due Process

The procedural due process requirements set forth in *Wolff* were met in this case.  Petitioner was provided with a copy of the March 6, 2007 incident report (incident report no. 1574307), on the day that it was written, the same day as the incident.  After the DHO returned this incident report to the staff, it was rewritten on April 17, 2007, to provide greater detail to provide Petitioner with additional information about the charge, and was delivered to Petitioner on April 18, 2007.  On April 23, 2007, Petitioner was provided with a further specification of the charges in the Notice of Disciplinary Hearing Before the DHO, and was also provided with the Statement of Inmate Rights at Discipline Hearing.

Although Petitioner claims that the DHO was not impartial, there is no evidence to support this claim.  There is nothing to suggest that the DHO in this case was not an independent hearing officer, as required by BOP regulations. *See* 28 C.F.R. § 541.16.

Petitioner was given an opportunity to present witnesses and documentary evidence at the disciplinary hearing, and he was provided with the opportunity to have a fulltime member of the staff represent and assist him before the DHO. After the hearing, Petitioner was provided with a written report of the findings,

sanctions, and the reasoning of the DHO.  He appealed the findings of the DHO through the BOP's administrative remedy system and received an independent review by both the Regional and Central offices of the BOP.

The Petitioner's complaint about procedural due process is based on the fact that the incident report was rewritten 39 days after the investigation was said to be completed on March 9, 2007.  Petitioner contends that the revised incident report added some facts that were not previously alleged in the first incident report and altered others.  Specifically, Petitioner asserts that the first incident report did not specify the time when Petitioner arrived at the room where the urine samples were collected, and it only made reference to Petitioner being given the opportunity to drink an eight ounce glass of water, not the many glasses of water he actually consumed.  However, there is nothing to suggest that Plaintiff's due process rights were violated when he was provided with this amended incident report—a report that provided greater specificity.

Further, the original incident report simply did not set forth any information about the time when Petitioner entered the room where the urine samples were being collected and, therefore, there was no "alteration" of the timing.  As far as the amount of water consumed by the Petitioner, the initial incident report merely pointed out that Petitioner was provided with an eight ounce glass of water when he came to the room, as required by the BOP's urine sampling procedures.  But this statement did not address whether Petitioner was or was not provided other glasses of water during the two-hour period.  Even so, the DHO required a more

10

detailed incident report be written so that Petitioner would be provided with a detailed rendition of the facts and circumstances underlying the charges, thus providing Petitioner with adequate notice of the charges and an opportunity to defend himself at the hearing.  Therefore, the DHO provided Petitioner the requisite due process.

### B.     Sufficiency of the Evidence

The primary focus in Petitioner's Habeas Petition is on the lack of merit in the DHO's decision.  As noted above, once the Court determines that there is "some evidence" to support the finding of the DHO, the Court must reject the evidentiary challenge by the Petitioner and uphold the finding of the DHO.  *Hill*, 472 U.S. at 457.  Here, there is sufficient evidence to meet this threshold.  The evidence included, for example, the following written statement of the reporting prison staff officer:

> On 03-06-07, I was supervising the collection of inmate urine samples and placed Inmate Carruth in the FPC visiting room at 8:15 a.m.  I informed inmate Carruth that he was required to provide a urine sample and that he would be given at least two hours to provide this sample.  At the time of his placement in the Visiting Room, I offered inmate Carruth the opportunity to drink an 8 ounce glass of water as prescribed by policy.  Inmate Carruth drank an 8 ounce glass of water at that time.  Inmate Carruth drank several glasses of water during the course of the 2 hour time frame.  Inmate Carruth was afforded several opportunities during the allotted 2 hour time frame to provide a sample and was escorted each time to a toilet in order for him to provide but failed on several occasions to provide a sample.  At 10:00 a.m., inmate Carruth was asked to provide a urine sample, but Carruth stated he could not provide a sample.  At 10:15 a.m., inmate Carruth again stated he could not provide a sample.  At this time, inmate Carruth was removed from the FPC Visiting Room and escorted to Special Housing for refusing

11

to provide a urine sample.

(Buege Decl. at Attach. D.)

The DHO did take into account Petitioner's claim that although he kept drinking water, he simply could not urinate because he has "shy bladder syndrome," and his claim that he was not given a full two hours to provide the sample.  However, the DHO also took into account the testimony of the reporting officer that a full two hours was provided, and the evidence from medical personnel that there was no report in Petitioner's medical record of any complaints of kidney problems and that Petitioner had, on three prior occasions, provided a urine specimen under prison supervision.

In conclusion, the record shows that there was "some evidence" to support the DHO's finding that Petitioner committed the prohibited act of Refusing to Provide a Urine Sample or to Take Part in Other Drug-Abuse Testing, a Code 110 Violation of BOP Policy.  The DHO's report shows that he relied upon the reporting officer's statements in the incident report, Petitioner's statements, and statements from medical personnel that Petitioner was not on any medications and made no complaints of kidney problems, and that Petitioner had successfully provided urine samples on prior occasions.  Despite Petitioner's assertions, there was sufficient evidence (that is, "some" evidence) to support the DHO's findings.  Therefore, Petitioner's constitutional rights were not violated, and no evidentiary hearing is necessary in this matter.

## V.  RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  The Petition of Quatros Deshanno Carruth for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE**.


Dated:  February 9, 2009

                                              _s/ Jeffrey J. Keyes_
                                              JEFFREY J. KEYES
                                              United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 24, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.